Camp v. Shaw.

---

## Norman H. Camp, and Curtis H. Camp, Impleaded with William M. Camp, Executor, et al., v. Catherine Shaw, William Swaney et al.

1. WILLS—*Contesting Under the Statute.*—A proceeding under Sec. 7, Ch. 148, entitled "Wills," providing that "any person interested may, within three years after the probate of any will, appear, and by his or her bill in chancery contest its validity, and an issue at law shall be made whether the writing alleged to be the will of the deceased is his will, and that such issue shall be tried by a jury according to the practice in courts of chancery," is a chancery proceeding and governed by the rules of chancery practice and procedure, except that the verdict of the jury is not merely advisory to the court as upon a feigned issue in other purely chancery actions.

2. WILLS—*Practice in Statutory Contests.*—The verdict of the jury in cases under section 7 of chapter 148, entitled "Wills," is obligatory upon the court to the same extent as a verdict at law, but according to the chancery rule the entire proceedings are matters of record and subject to review in the Appellate Court without the taking and noting of technical exceptions to the rulings of the court.

3. CHANCERY PRACTICE—*Exceptions, etc.*—The rules of chancery practice do not require that exceptions be taken and noted to the various holdings of the court during the progress of a trial.

4. VERDICTS—*When to be Set Aside.*—A verdict manifestly against a clear preponderance of the evidence will be set aside.

5. WILLS—*Alterations, When Spoliations.*—Alterations in a will or other instrument, if made by a stranger to it, are but spoliations and do not operate to avoid the will or instrument thus mutilated or defaced. If the will of a deceased person is altered without fraudulent intent or by one not interested in its provisions, equity will enforce it as originally written, if its original condition can be ascertained.

6. WILLS—*Presumptions as to Interlineations.*—The presumption as to interlineations or erasures in a will is that they were made after the execution of the will. If made by the testator and not re-attested, inter-

lineations or erasures have no legal effect, but it being presumed that the erasure was intended to be dependent upon the alterations going into effect as a substitute and the attempted alteration having failed for want of legal authentication, the will, if its original reading can be made out, will stand as first written, and if its original wording can not be determined it will be enforced in all other parts, the illegal portions treated as blanks.

7. WITNESS—*Parties—The Rule of Common Law in Chancery Proceedings Not Changed.*—At the common law it was competent for the defendant in a chancery proceeding to testify in behalf of a co-defendant, provided the witness was disinterested in the matter about which he was called to testify. Our statute makes no change in this common law rule.

8. WILLS—*Additions Not Attested as Affected by the Execution of Codicils.*—A person having executed his will, afterward wrote an addition to it, marked it sheet B, and attached it to the will, intending it to operate as a codicil, but did not acknowledge it or cause it to be attested, and afterward executed and acknowledged a codicil and fastened it, "sheet B," and the will, together. *It was held* that the codicil operated as a publication and due execution of the sheet B and the will all speaking from the date of the codicil.

9. CONTESTING WILLS—*Practice — Collateral Issues — Cross-bills.*—When a contestant admits the execution of the original will and codicil but denies that certain instruments attached to the will are parts of it, and makes persons interested in such instrument parties, a cross-bill is not necessary pleading to raise the question as to whether the "certain instruments" were a portion of the will.

**Memorandum.**—Proceeding to contest a will. Error to the Circuit Court of Piatt County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the May term, 1893. Reversed and remanded. Opinion filed October 28, 1893.

The opinion states the case.

BRIEF FOR PLAINTIFFS 'IN ERROR, HENRY G. MILLER AND NORMAN H. CAMP, ATTORNEYS.

If "sheet B" was not a part of the will at the time it was originally executed and attested, but was afterward, and before making the codicil, inserted in the will by the testator, with the intention of thereby making it a part of his will, then the legal execution of the codicil to the will, as thus amended and altered, rendered the whole will including "sheet B" good and valid as a will. Burge v. Hamilton, 72 Ga. 568; In re Goods of Sykes, L. R., 3 P. & D. 26.

Camp v. Shaw.

A codicil is now commonly understood to be an addition to or alteration of, the last will and testament. 1 Redfield on Wills (3d Ed.) 6.

It has often been held that a codicil may operate as a republication of a former will. The effect of a codicil ratifying, confirming and republishing a will is to give the same force to the will as if it had been written, executed and published at the date of the codicil. 1 Redfield on Wills, 288.

A codicil need not be actually annexed to the will in order to have it operate as a republication of the will. When a codicil is so executed as to be a republication of the will, both should be read and can stand together as one entire instrument, and the will speaks from the date of the codicil. Van Cortland v. Kip, 1 Hill 590, 7 Hill 346.

Declarations of the testator made both before and after the execution of his will or codicil are relevant to show what papers constituted his will. Sugden v. St. Leonards, L. R., 1 P. D. 152; Gould v. Lakes, L. R., 6 P. D. 1; Burge v. Hamilton, 72 Ga. 568; Stephens' Digest of Evidence, Art. 29.

Brief of Defendants in Error, Buckingham & Schroll and S. R. Reed, Attorneys.

In contested will cases arising under our statute, the verdict of the jury is to have the same force and effect as is given to a verdict in a case at law under a like state of facts. Calvert v. Carpenter, 96 Ill. 63; Shevalier v. Seager, 121 Ill. 564; Long v. Long, 107 Ill. 210; Brownfield v. Brownfield, 43 Ill. 147; Meeker v. Meeker, 75 Ill. 260; American Bible Society v. Price, 115 Ill. 635.

Mr. Presiding Justice Boggs delivered the opinion of the Court.

This was a bill in chancery, filed by the defendants in error, to contest the will of Dr. Edward Swaney, who died in Bement, Piatt county, Illinois, on the 28th day of January, 1891. The issues formed under the pleadings in the cause were submitted to a jury, as required by Sec. 7 of Chap. 148, R. S., entitled " Wills." The record presented

to this court was prepared in compliance with the rules of chancery practice. It is urged that the rulings of the court on evidence, motions and instructions can not be reviewed in this court unless exception thereto was taken at the time, and such exception preserved in a bill of exceptions, as in cases upon the common law side of the court.

The proceeding was instituted in virtue of authority given by Sec. 7 of Chap. 148, entitled " Wills," the provisions of which are that " any person interested may, within three years after the probate of any will, appear, and by his or her bill in chancery contest its validity, and an issue at law shall be made whether the writing alleged to be the will of the deceased is his will, and that such issue shall be tried by a jury, according to the practice in courts of chancery."

The proceeding therefore, is, we think, in chancery, and governed by the rules of chancery practice and procedure, except that the verdict of the jury is not merely advisory to the court, as if upon a feigned issue in other purely chancery actions. The verdict of the jury in this and like cases under the 7th section of the chapter on wills, is obligatory upon the court to the same extent as a verdict at law, but according to the chancery rule the entire proceedings are matter of record and subject to review in this court without the taking and noting of technical exception to the rulings of the court. The rules of chancery practice do not require that exceptions be taken and noted to the various holdings of the court during the progress of a cause. Smith v. Newland, 40 Ill. 100.

The instruments purporting to constitute the will of the deceased consisted of a paper writing denominated by the parties hereto, the " original will," which bore date July 23, 1888, was duly signed, and acknowledged and witnessed as the will of the deceased, and another paper executed afterward by the deceased, but not dated or witnessed, called by the parties " sheet B," and yet another paper executed after sheet B, purporting to be a codicil to the will, dated January 9, 1891, and duly attested by witnesses. The jury found by their verdict that the writing of the

date of July 23, 1888, called by the parties the original will, was the last will and testament of the deceased, and that sheet " B " and the codicil were not parts of the will.    The grour d of attack upon the codicil was that the testator was, at the date of its execution, of unsound mind, and mentally incapable of making a valid will or of " requesting witnesses to attest a paper as a will."    The codicil bears date January 9, 1891, but it is contended by the defendants in error and conceded, that it was not attested by witnesses until in the evening, after nightfall, of the 10th day of that month. The only evidence we have been referred to or have been able to find upon a careful examination of the record, tending in any degree to establish the alleged mental incapacity of the testator at that or any other time, is the testimony of Dr. Vance.    It is to the effect that the witness was called in his professional capacity to see the testator, and saw him on the 10th of January, the day of the execution of the codicil.    He would not say positively whether he visited the deceased before or after noon of that day, but as he could best recollect it was in the afternoon.    He stated that he found his patient, who was also a physician, and had been taking morphine under his own prescription, in a semi-comatose condition from the effect of that drug which he had taken in such quantity as to render him so stupid and unconscious that he was unable to intelligently comprehend or transact ordinary business, a mental condition which the witness thought would continue until the effect of the opiate had passed away, which might occur in five or six hours, possibly longer.    When directly asked, the witness said he could not say that the effects of the morphine had not passed away at the time it is alleged the codicil was attested.

Dr. Vance continued the use of morphine but in smaller doses.    He next saw the deceased on the 12th of January, and then found him much improved in mind; in a normal condition mentally, and able to enter into and hold rational and intelligent conversation.

After that the patient was, in the opinion of Dr. Vance, at times in possession of his mental powers and at other

times his mind would seem to wander and be beyond control.

Dr. D. D. Kemmel and Ada C. Kemmel, his wife, both of whom were friends of many years standing of the testator and who were selected by him as witnesses to his " original " will, testified that they visited him after supper and " after dark " on the 10th day of January. That he was entirely rational and sound in mind and fully comprehended what he was about to do. He made a statement to them about a codicil he desired to add to the will they had previously signed and then produced the papers presented to the jury as the codicil and said to Dr. Kemmel, " Here is a codicil to my will; I wish you and your wife to sign it. I acknowledge this as my signature to the codicil." That they signed their names as requested, after which he took the paper and seemed to be reading or looking it over as he folded it. Unless these witnesses were deemed unworthy of credit, it would seem undeniable that the deceased was free from the influence of morphine and capable of intelligent and rational action when, at his request, they, as witnesses, signed the codicil. No reason appears for discrediting them. They evidently enjoyed and had for many years possessed the confidence and esteem of the testator. Their statements were not, it seems to us, irreconcilable with the testimony of Dr. Vance, but could readily be harmonized with it; nor were they contradicted, or in any way discredited, or the value of their testimony impaired by anything otherwise appearing in the record. Upon the contrary, the testimony of all other witnesses who spoke of the mental capacity of the deceased, is that he was of sound mind and memory.

Mrs. Bodman, between whom and the deceased an acquaintance had existed for more than twenty years and who was his nearest neighbor at the time of his death, called on him frequently during his illness in January. She testified that she never saw him when she thought him otherwise than sound in mind and memory. Mr. Ezra Post, who had known him somewhat intimately for a like period of years, and attended and waited upon him for two weeks during his

illness in January, testified that he never had cause to doubt his mental capacity. That if awakened suddenly from sleep induced by morphine his look was vacant and his mind dormant, but that he would soon recover and be himself again. This witness testified that he was there as an attendant upon the deceased before and after Dr. Vance began to treat him and that he advised that Dr. Vance be called to the aid of the testator who was prescribing for himself. That after Dr. Vance's first visit, which was on the 10th of January, the deceased transacted business and settled business affairs with different persons on different occasions in presence of the witness and that he was fully capable of attending properly to such matters.

Mr. George Grant, who was a contractor and builder, completed a house for the testator in January, 1891, and had a final settlement of the contract and business matters connected therewith with the deceased on the 13th of January, 1891. As a witness Mr. Grant testified that the deceased fully comprehended the settlement and adjusted the same with the ability men usually displayed in such affairs.

Mr. Grant gave a detailed account of his interview and settlement with deceased. It appeared in the course of the settlement, that Mr. Grant was indebted to merchants and lumber dealers for hardware and building material used in the construction of the house, and the deceased signed checks upon the bank, payable to such merchants and dealers respectively for the proper amounts due each, in order that all liens upon the building might be discharged, and then signed a check payable to Mr. Grant for the amount remaining due to him as the contractor. Work not contemplated or covered by the contract for building had been performed by the contractor, for which bills in excess of the contract price were presented, discussed, and adjusted by the parties in a business-like manner. The mental powers of the deceased were, in the opinion of Mr. Grant, wholly unimpaired. The transactions with Mr. Grant occurred on the third day after the execution of the codicil.

Judge W. G. Cloyd, who had known the testator for

many years, testified that he visited him as often as once a week during the month of January, 1891, and that in his opinion the mental condition of the sick man was as good as it had ever been; that there was nothing wrong with him mentally, and that he was fully capable of transacting the ordinary business affairs of life.

Dr. Bingham, a Presbyterian minister of Bement, saw and conversed with the deceased some time in January, most probably a few days before the 10th. He testified that the deceased was then sound in mind.

Opposed to the concurrent opinion of all these persons we find only the testimony of Dr. Vance, if it can rightly be said to be so opposed. There is in our opinion no irreconcilable conflict in the evidence of the physician and that of any other witness. We do not think the doctor intended to be understood as expressing the opinion that the mind of the deceased was injuriously affected, otherwise than temporarily and as a result of the influence of a drug taken by the deceased as a remedy for his affliction or to relieve him from pain and suffering.

His mind might have been in this condition when Dr. Vance saw him on the 10th, and been sound and normal when Dr. Kimmel and Mrs. Kimmel, at his request, attested the codicil some hours afterward, and he then be able to fully comprehend the nature and effect of what he was causing to be done.

The deceased had not the morphine habit fixed upon him. The incapacity which would arise from the use made of that drug would be but temporary, and his return to the full possession of his mental faculties would naturally follow when the effect of the morphine ceased. There is no presumption in favor of a continuance of such incapacity. We find nothing in the testimony to show that the mental powers of the deceased were in a general way impaired by the medicine or by disease with which he was afflicted.

Much as we dislike to differ with a jury as to the proper conclusion to be arrived at upon a pure issue of fact, yet we feel impelled to declare the finding in this case that the de-

Camp v. Shaw.

ceased was of unsound mind and incapable of making a codicil, or will, to be manifestly against a clear preponderance of the evidence.

It is alleged by an amendment to the original bill of complaints, that an alteration was made in the paper writing, purporting to be a codicil, after its alleged execution, changing its provision in a material and substantial manner, without the knowledge or consent of the testator.

Proof pro and con upon this point was submitted. It is urged that the jury may have rejected the codicil because they regarded the allegations of the bill in relation to such alterations sustained by the proof. The bill does not charge that such alterations were made fraudulently by some persons interested in and benefited by the change. Alterations in a will or other instruments, if made by a stranger to it, are but spoliations and do not operate to avoid the will or instrument thus mutilated or defaced. Redfield on Wills, Chap. 7, Sec. 43–6; Wait's Actions and Defenses, 472.

" The law desires to put into execution the will of a deceased person, and if it has been altered without fraudulent intent or by one not interested in its provisions, will enforce it as originally written, if its original condition can be ascertained." Redfield on Wills, Chap. 7, Sec. 40; 1st Amer. & Eng. Ency. of Law, 522.

The presumption as to interlineations or erasures in a will is that they were made after the execution of the will. Redfield on Wills, Chap. 7, Sec. 23–24.

If made by the testator and not re-attested, interlineations or erasures have no legal effect; but it being presumed that the erasure was intended to be dependent upon the alteration going into effect as a substitute, and the attempted alteration having failed for want of legal authentication, the will, if its original reading can be made out, will stand in force as first written, and if its original wording can not be determined, it will be enforced in all other parts, the illegal portions being treated as blanks. Wolf v. Botlinger, 62 Ill. 368.

In no view that could be taken could this codicil in the

case at bar be held void or inoperative under the issues made and submitted to the jury.

Sheet B was in the handwriting of the deceased and bore his signature at its conclusion, and though not dated, we think it satisfactorily proven that it was written by the deceased after the execution of the original and before the attestation of the codicil. It purported to be part of his will, but was not signed by attesting witnesses. The evidence tended to show that the intestate attached or attempted to attach sheet B and the codicil to the original will. It was proven that he placed them all in an envelope, which he deposited with Wm. C. Camp, the executor named in the original will, at the same time telling him that the envelope contained his last will. The plaintiff in error offered to prove by the executor that Dr. Swaney, in December, before his death, during the course of a conversation between them, pointed out this sheet B as being a part of his will, and that at that time, sheet B, the original will and the codicil were in the possession of the intestate and were fastened together. The court, upon the objections of the defendant in error, refused to allow such testimony to be heard by the jury, to which ruling the plaintiff in error excepted. Whether the court regarded the witness as incompetent, or the subject-matter of the proof offered immaterial, is not clear to us. The witness was not incompetent merely because he was a party to the proceeding. At the common law it was competent for the defendant in a chancery proceeding to testify in behalf of a co-defendant, provided the witness was disinterested in the matter about which he was called to testify. Our statute makes no change in this common law rule. Bradshaw v. Combs, 102 Ill. 428; McKay v. Reiley, 135 Ill. 589. The witness had no interest in sustaining sheet B as part of the will. Its provisions did not affect him injuriously or otherwise. He was competent to speak as a witness. We think that if, after the execution of the original will, the deceased wrote sheet B and attached it to the will, intending it to operate as a codicil to his will, but did not acknowledge it or cause it to be attested and after-

ward executed, and acknowledged the codicil and fastened it, sheet B and the will together, that the codicil operated as a publication and due execution of the sheet B and the will, all speaking from the date of the codicil. 3 Amer. & Eng. Ency. of Law, page 303, note 8. Hence the testimony offered was pertinent and material to the issue and should, in our opinion, have been admitted.

The bill of complaints filed by the defendants in error specially attacked sheet B, and denied that it was a part of the will, but alleged that it was a loose and separate sheet of paper which had never been witnessed or executed as a will by the testator. Norman Camp, legatee under sheet B, was made defendant to the bill, and it was quite sufficient that he, by answer, made an issue as to said sheet B. The original will and the codicil were admitted to probate. Had the defendants in error confined the attack to these instruments, no doubt a cross-bill would have been the appropriate pleading to raise the question of whether sheet B was a portion of the will.

Because we think the finding of the jury as to the codicil was against the weight of the testimony, and the evidence offered in support of sheet B was improperly excluded, the decree must be and is reversed and the cause remanded for further proceeding conformable to this opinion.